STATE, Plaintiff v. ASCENCIO, Defendant
KAHN, Appellant, v. ULLSVIK, Respondent.

Court of Appeals

*No. 79–010. Submitted on briefs July 23, 1979.—*
*Decided October 19, 1979.*
(Also reported in 285 N.W.2d 910.)

For the appellant the cause was submitted on the brief of *Paul E. Sicula* and *Atinsky, Kahn, Sicula & Teper* of Milwaukee.

For the respondent the cause was submitted on the brief of *Richard A. Perkins,* district attorney, of Jefferson County.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J.   This is an appeal by a bail bond surety from judgment entered by the circuit court against the surety for the full amount of the bond with no remission. We reverse.

Although not raised by the parties, we must determine whether we have jurisdiction of the appeal. The notice of appeal was filed in the trial court January 3, 1979, and appeals from "the whole order of December 8, 1978 rendered by the Hon. John B. Danforth, Circuit Court Judge, Jefferson County, wherein it was ordered that the State be granted a judgment against the undersigned

sureties for the amount of Twenty-five Thousand Dollars ($25,000.00) as a bail forfeiture judgment. . . ."

The order signed on December 8, 1978, provides:

Upon all of the records, files and proceedings herein had and taken, and on December 8, 1978, the Court having held a hearing concerning the State's motion for judgment upon the court's order of bail forfeiture,

IT IS HEREBY ORDERED that the State's motion for judgment of forfeiture of bail, is granted.

A final judgment against defendant for $25,000 was signed and entered December 29, 1978. The December 8 order was not a final order appealable as of right under sec. 808.03(1), Stats., because it contemplated the entry of a judgment. *Barneveld State Bank v. Petersen,* 68 Wis.2d 26, 29–30, 227 N.W.2d 690 (1975). The question is whether this court has jurisdiction of the appeal in light of the fact that the appellant appealed from the nonfinal December 8 order rather than the December 29 judgment which is appealable as of right under sec. 808.03(1).

Rule 809.10(1)(a), Stats., provides that an appeal is initiated by filing a notice of appeal which "shall specify in the notice of appeal the judgment or order appealed from." The intent of the notice of appeal, which was filed after entry of the judgment, is to obtain relief from the judgment. There is no requirement that the notice set forth the date of the order or judgment appealed from. "All that is necessary is that the judgment or order be sufficiently identified that there can be no doubt as to what is appealed from." *State v. Avery,* 80 Wis.2d 305, 309, 259 N.W.2d 63, 64 (1977). Treating reference to the December 8 date as surplusage, there is no possibility of confusion as to what is appealed from in the

instant case. We therefore conclude that this court has jurisdiction of the appeal.

The issue on the merits is whether the court abused its discretion in refusing to remit all or part of the amount of the bond in excess of the expenses of the state resulting from the principal's failure to appear for trial.

April 17, 1977, Joseph Ascencio of Riverdale, Illinois was charged in the circuit court for Jefferson County with criminal trespass, battery, second-degree sexual assault and false imprisonment, in violation of secs. 943.14, 940.19, 940.225(2) and 940.30, Stats. Bail of $25,000 was set. Ascencio pleaded not guilty. A $25,000 bail bond was executed by Ascencio as principal and Allegheny Mutual Insurance Company as surety, Gerald Kahn of Meiroff and Kahn Bonding and Insurance Company, as its agent.

The state asserts, and the surety does not contend otherwise, that Ascencio and the surety received notice of the trial date, June 27, 1978 at 9:00 a.m. The jury, counsel and subpoenaed witnesses were present at the appointed hour but not Ascencio. The court ordered the bond forfeited[1] and issued a bench warrant for Ascencio's arrest.

---

[1] Section 969.13, Stats., provides in relevant part,

(1) If the conditions of the bond are not complied with, the court having jurisdiction over the defendant in the criminal action shall enter an order declaring the bail to be forfeited.

(2) This order may be set aside upon such conditions as the court imposes if it appears that justice does not require the enforcement of the forfeiture.

(3) By entering into a bond, the defendant and sureties submit to the jurisdiction of the court for the purposes of liability on the bond and irrevocably appoint the clerk as their agent upon whom any papers affecting their bond liability may be served. Their liability may be enforced without the necessity of an independent action.

(4) Notice of the order of forfeiture under sub. (1) shall be mailed forthwith by the clerk to the defendant and his sureties

Ascencio was arrested by Illinois authorities June 30, 1978 in Sauk Village, Illinois. He was taken to the Cook County, Illinois jail where he refused to waive extradition. Formal extradition proceedings were initiated, as a result of which Ascencio waived extradition September 19, 1978 and was immediately returned to Wisconsin. He pleaded guilty October 5, 1978, to a reduced charge on one count of third degree sexual assault, sec. 940.225(3), Stats., and guilty to the other original charges plus a misdemeanor charge of jumping bail, sec. 946.49(1), Stats.

Ascencio was sentenced December 8, 1978, following which the court heard the state's motion for judgment on the bail forfeiture order. Mr. Kahn appeared at the hearing.

Ascencio testified that he knew the trial was set for the morning of June 27, 1978, but that he was helping a pregnant friend in Sauk Village who had been experiencing labor pains for about a week and expected her child July 2, 1978. Fatigued by his ministrations until the early morning of the trial, he thought it unwise to drive to Wisconsin and napped until noon. He then called his attorney who advised him immediately to return to Wisconsin. An Illinois public defender advised him not to waive extradition on the theory that Wisconsin might

at their last addresses. If the defendant does not appear and surrender to the court within 30 days from the date of the forfeiture and within such period he or his sureties do not satisfy the court that appearance and surrender by the defendant at the time scheduled for his appearance was impossible and without his fault, the court shall upon motion of the district attorney enter judgment for the state against the defendant and any surety for the amount of the bail and costs of the court proceeding. Proceeds of the judgment shall be paid to the county treasurer. The motion and such notice of motion as the court prescribes may be served on the clerk who shall forthwith mail copies to the defendant and his sureties at their last addresses.

fail to seek extradition or botch the process. He waived extradition when told the papers were in order.

Mr. Kahn did not receive notice of the order of forfeiture until July 5, 1978. The surety was unable to return Ascencio to Wisconsin within the thirty days provided by sec. 969.13(4), Stats. because he was in the Cook County jail and would not waive extradition.

Mr. Kahn produced evidence that the total cost of the jury and witness fees for the scheduled trial was $846.15. The sheriff's expenses in returning Ascencio from the Cook County jail were $131.20. Mr. Kahn offered on behalf of the surety to reimburse the state for those costs as well as $500 for preparing the extradition, if the bond was reinstated. He indicated that the surety would be willing to pay the costs of the Sauk Village police, the public defenders and the jail time of Ascencio in Illinois from July until the date of his return, although it might be difficult to compute those items.

The court stated that it saw no reason why the forfeiture order should be modified and granted judgment against the surety for the full amount of the bond.

It is undisputed that the conditions of the bond were not complied with when defendant defaulted by not appearing at the scheduled trial. The trial court properly entered an order declaring the bail forfeited. Sec. 969.13(1), Stats.

The defendant did not appear and surrender to the court within thirty days from the date of the forfeiture and there was no showing that his failure to appear and surrender at the time scheduled for his appearance was impossible and without his fault. Read literally, sec. 969.13(4), Stats., requires the court upon motion of the district attorney to enter judgment for the state against the defendant and his sureties for the amount of bail and costs of the court proceeding.

The judgment, however, is based upon the forfeiture order. Section 969.13(2), Stats., permits the court to set aside the forfeiture order upon such conditions as the court imposes "if it appears that justice does not require the enforcement of the forfeiture." No part of sec. 969.13 prohibits the court from setting aside an order of forfeiture after the thirty day period in sub. (4) has elapsed.

It is reasonable to permit remission at any time prior to judgment. The state desires that the surety seek out, apprehend and surrender the defaulting principal to bring the principal to justice and to save the state costs and delay. We must preserve an incentive for the surety to return the defaulting principal. That incentive must be a possible reduction in the amount of forfeiture, for if the surety can salvage nothing after a principal has defaulted, the surety will not throw good money after bad.

We conclude that prior to entry of judgment of forfeiture, the trial court may set aside or modify the order for forfeiture on such conditions as the court deems justice requires.

The decision whether to set aside or modify the order is highly discretionary and is reviewable in the same manner that all discretionary acts are to be reviewed.

We look first for evidence that the trial court exercised its discretion when making its decision and next for a statement by the trial court as to the basis for that exercise. *McCleary v. State,* 49 Wis.2d 263, 277, 281–82, 182 N.W.2d 512 (1971). If we conclude that the trial court has not considered the factors on which exercise of its discretion should have been based, the decision will be upheld if we find facts which would support the decision had discretion been exercised on the basis of those facts;

and we must reverse if the facts show that the decision is insupportable. *Maier Const., Inc. v. Ryan,* 81 Wis.2d 463, 473, 260 N.W.2d 700 (1978), citing *Klimas v. State,* 75 Wis.2d 244, 247, 249 N.W.2d 285 (1977), and *Hyslop v. Maxwell,* 65 Wis.2d 658, 664, 223 N.W.2d 516 (1974).

The trial court exercised its discretion in refusing to modify the order but failed to state the basis for its action, perhaps because of the dearth of precedent in this state as to what factors should be taken into account.

Our bail forfeiture statute is patterned in part upon Rule 46 of the Federal Rules of Criminal Procedure.[2] Although sec. 969.13 does not contain a specific provision on remission, as does the federal rule, and contains a

---

[2] Section 969.13 (2) contains almost identical language to Rule 46 (e) (2). We quote Rule 46 (e) and (f) :

(e) Forfeiture

(1) *Declaration.* If there is a breach of condition of a bond, the district court shall declare a forfeiture of the bail.

(2) *Setting aside.* The court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture.

(3) *Enforcement.* When a forfeiture has not been set aside, the court shall on motion enter a judgment of default and execution may issue thereon. By entering into a bond the obligors submit to the jurisdiction of the district court and irrevocably appoint the clerk of the court as their agent upon whom any papers affecting their liability may be served. Their liability may be enforced on motion without the necessity of an independent action. The motion and such notice of the motion as the court prescribes may be served on the clerk of the court, who shall forthwith mail copies to the obligors to their last known addresses.

(4) *Remission.* After entry of such judgment, the court may remit it in whole or in part under the conditions applying to the setting aside of forfeiture in paragraph (2) of this subdivision.

(f) Exoneration. When the condition of the bond has been satisfied or the forfeiture thereof has been set aside or remitted, the court shall exonerate the obligors and release any bail. A surety may be exonerated by a deposit of cash in the amount of the bond or by a timely surrender of the defendant into custody.

The source of the present bail statutes is a major revision of

thirty day provision which the federal rule does not, federal precedents are of some assistance.

*United States v. Davis,* 202 F.2d 621 (7th Cir. 1953), *cert. den. sub nom. Ferguson v. United States,* 345 U.S. 998 (1953), held that a district court could relieve a bondsman, even upon willful default of the principal. The determination whether to remit a forfeiture is "a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." 202 F.2d 621, 625, quoting *Langnes v. Green,* 282 U.S. 531, 541 (1931). The surety assumes the burden of proving that an injustice is done by the forfeiture, *United States v. Foster,* 417 F.2d 1254, 1256 (7th Cir. 1969), although forfeitures are not properly ordered to enrich the government or punish a defendant. *United States v. Kirkman,* 426 F.2d 747, 752 (4th Cir. 1970). The government is under no obligation to show even approximately the total amount of expenses caused by the defendant's default because upon default of the principal, "the surety becomes the absolute debtor of the United States for the amount of the penalty." *United States v. Davis,* 202 F.2d 621, 625, citing *United States v. Hickman,* 155 F.2d 897 (7th Cir. 1946).

The federal courts have considered the following factors in deciding whether and how much to remit from a forfeiture: government expense in retrieving the principal and again preparing for trial,[3] prejudice and delay

the criminal code contained in ch. 255, Laws of 1969. The prefatory note to the session law states that certain provisions of the new statute "are taken from the Federal Bail Reform Act of 1966."

[3] *United States v. D'Argento,* 339 F.2d 925, 927 (7th Cir. 1964), 373 F.2d 307, *cert. den. sub nom. Tomaszck v. United States,* 389 U.S. 833 (1967), *United States v. Kirkman,* 426 F.2d 747, 752 (4th Cir. 1970), *United States v. Bass,* 573 F.2d 258, 260 (5th Cir. 1978), *United States v. Foster,* 417 F.2d 1254, 1257 (7th Cir. 1969).

suffered by the government,[4] the stage of the proceedings,[5] whether a professional bondsman or merely a friend of the defendant is involved,[6] willfulness of the default,[7] expenses of the surety,[8] whether the surety surrendered the principal,[9] whether the surety knew of a planned default,[10] whether the defendant or the surety were aware of conditions that were subsequently violated,[11] whether the defendant was required by law to make a court appearance in another state,[12] whether the defendant was imprisoned at the scheduled time of appearance,[13] whether the government was informed that the principal would not be able to appear,[14] whether the forfeiture appeared to be an attempt to punish the defendant,[15] the face amount of the bond and justifications for setting the original amount,[16] the degree of blatancy or extenuating circumstances in defendant's default,[17] and the inability of sureties to prevent the defendant from conspiring with others to avoid trial.[18]

[4] *D'Argento, supra* n. 3 at 928; *United States v. Nell*, 515 F.2d 1351, 1353 (D.C. Cir. 1975).

[5] *Bass, supra* n. 3 at 260; *United States v. Harrell*, 415 F.2d 1125, 1126 (8th Cir. 1969); *United States v. Fook Dan Chin*, 304 F. Supp. 403, 406 (S.D.N.Y. 1969).

[6] *Bass, supra* n. 3 at 260; *Kirkman, supra* n. 3 at 748.

[7] *Harrell, supra* n. 5 at 1126; *Nell, supra* n. 4 at 1353; *D'Argento, supra* n. 3 at 928.

[8] *Fook Dan Chin, supra* n. 5 at 406. *But see United States v. Leyva*, 59 F.R.D. 303, 304 (W.D. Tex. 1973).

[9] *Nell, supra* n. 4 at 1353; *Fook Dan Chin, supra* n. 5 at 406.

[10] *Kirkman, supra* n. 3 at 751.

[11] *D'Argento, supra* n. 3 at 927.

[12] *D'Argento, supra* n. 3 at 927.

[13] *United States v. Petrone*, 19 F. Supp. 704, 707 (D.N.J. 1937). *But see Leyva, supra* n. 8 at 305.

[14] *Foster, supra* n. 3 at 1258; *Bass, supra* n. 3 at 259.

[15] *Foster, supra* n. 3 at 1258.

[16] *Foster, supra* n. 3 at 1258.

[17] *Foster, supra* n. 3 at 1258.

[18] *Kirkman, supra* n. 3 at 751.

None of the listed factors should, however, cause us to convert a bail bond into a mere promise to indemnify the state against the cost of retrieving a criminal defendant who has not appeared for trial.

A default has occurred because the surety failed to procure the appearance of the defendant. The statutory "purpose of bail [is] to assure the appearance of the defendant when it is his duty to appear to answer a criminal prosecution." Sec. 969.01(4), Stats. If prior to the time for that appearance the surety desires relief from the obligations of its bond, the surety is authorized by sec. 969.14(1) and (3) to "arrest the principal and deliver him to the sheriff" and to apply for an order discharging the surety.[19] Remittance of all but the expense of retrieval would ignore the statutory purpose of bail and permit the surety to escape the obligations on its bond without first surrendering defendant.

The record does not support the trial court's conclusion that no part of the bail forfeiture should be remitted.

---

[19] *Compare* the strong statement as to the right of a surety to apprehend and surrender the principal contained in *Restatement of Security* sec. 204, comment b to subs. (1) at 550–51 (1941):

The surety's liability as bail is to procure the appearance of the defendant at the prescribed time and place. If he does not do so, the surety in a criminal case must pay the penal sum stated in the bond. Since the appearance of the defendant is the surety's responsibility, the defendant is technically in the custody of the surety. If the surety believes that there is danger of the defendant's disappearance, the surety may end his own responsibility by surrendering the defendant to the proper officers. Such an act will not be taken usually unless the surety believes that there is a danger of the principal fleeing the jurisdiction. To enforce such surrender, the surety may personally arrest the defendant within or without the state or may obtain the aid of the officers of the law to compel such surrender. Since there is a strong public policy in preventing defendants from absconding, the surety is permitted a large discretion as to the steps necessary to effect the defendant's apprehension.

Although the facts support a substantial forfeiture, partial remission is appropriate.

Defendant failed to appear at a critical stage of the proceedings, the trial. The willfulness, blatancy and lack of extenuating circumstances as to his default are beyond dispute. We are struck by the lack of evidence as to any effort made by the surety to prevent the default. The charges against the defendant were serious and the amount of the bond, $25,000, substantial. The surety is a professional bondsman and must have known its obligations and rights. The defendant was promptly apprehended in Illinois and was incarcerated between the period of his apprehension and the time he was returned to this state, but the surety knew that the defendant resided in Illinois and that the defendant could, as he did, resist extradition. Defendant was within his rights in resisting extradition but the fact that he did so cannot redound to to the surety's credit. There is no evidence that aside from the substantial inconvenience resulting from the frustrated original trial, the state was inconvenienced by the delay in bringing the defendant to justice. The surety presented evidence as to the actual cost to the state of returning the defendant and no evidence as to the cost of the extradition proceedings but offered to pay $500 toward that cost. The offer is reasonable.

As the trial court's decision is not supported by the evidence, we must reverse the judgment. *Maier Const., Inc. v. Ryan,* 81 Wis.2d 463, 260 N.W.2d 700 (1978).

Where the principal facts are undisputed and the controversy centers on ultimate findings of fact or conclusions of law, we are not bound by the findings of the trial court but may proceed to examine the record in order to reach our own determination. *Chicago, M., St. P. & P. R.R. Co. v. Milwaukee,* 47 Wis.2d 88, 96, 176 N.W.2d 580

(1970), quoting from *Engineers & Scientists v. Milwaukee*, 38 Wis.2d 550, 553–54, 157 N.W.2d 572 (1968). The facts in the instant controversy are undisputed. Whether justice requires enforcement of the bail forfeiture under sec. 969.13(2), Stats., is a question of law. The trial court concluded that the enforcement order should not be modified. We may reach an independent conclusion on the undisputed facts as to that question, and we do so.

We conclude that because the surety has not shown it took precautions to assure that the defendant would appear at trial, a substantial portion of the forfeiture should not be remitted. In our opinion, that portion should be 50% of the face of the bond, or $12,500. Because defendant was retrieved, even though not by the surety, we conclude that the remaining balance of $12,500 should be remitted less the expenses incurred by the state as a result of defendant's failure to appear: $846.15 for the cost of the injury and witness fees at the scheduled trial, $131.20 for the sheriff's expenses and the $500 the surety indicated it was willing to contribute toward the cost of extradition.

The trial court should modify its prior order so as to provide that $13,977.35 of the bond is forfeited. Judgment should be entered in favor of the state against the surety for that amount.

*By the Court.*—Judgment reversed and vacated. The matter is remanded to the trial court for further proceedings consistent with this opinion.