IN RE the RETURN OF BOND IN STATE of Wisconsin v. Christopher J. MELONE, Jr.:

Barbara MELONE, Appellant,

v.

STATE of Wisconsin, Respondent.

Court of Appeals

*No. 00–0969. Submitted on briefs October 23, 2000.—Decided December 6, 2000.*

2001 WI App 13

(Also reported in 623 N.W.2d 179.)

On behalf of the appellant, the cause was submitted on the brief of *Theodore B. Kmiec III* of *Gagliardi, Nelson & O'Brien*, Salem.

On behalf of the respondent, the cause was submitted on the brief of *Jeffrey J. Kassel*, assistant attorney general, and *James E. Doyle,* attorney general.

Before Brown, P.J., Anderson and Snyder, JJ.

¶ 1. BROWN, P.J. The trial court declined a request to set aside an order that a mother's bail money be forfeited to the State on the ground that it *always* refuses to return bail money no matter what the circumstance. But the statute on bail forfeitures, WIS.

STAT. § 969.13(2) (1997–98),[1] requires the court to exercise discretion and consider factors for and against enforcing the forfeiture on a case-by-case basis. Applying a blanket policy to all cases is an erroneous exercise of discretion because it is tantamount to a refusal to exercise discretion. We remand this case to the trial court to weigh the factors for and against returning some or all of the $20,000 to Barbara Melone, which she posted for bail on her son's behalf.

¶ 2.   Christopher J. Melone, Jr., was charged with second-degree recklessly endangering safety and endangering safety by use of a dangerous weapon. Bail was set at $5000. Barbara Melone, Christopher's mother, posted the bail, but it was forfeited when Christopher missed a court date. Bail was set again, this time for $20,000, which Melone also posted. Bail was conditioned upon Christopher not consuming alcohol or drugs without a prescription. According to Melone, she posted the $20,000 bail to help Christopher and his attorney prepare a defense and to enroll him in a drug and alcohol rehabilitation program, at her expense. She initially enrolled Christopher in an outpatient treatment program; when that failed, she enrolled him in an inpatient program. Sometime after the $20,000 was posted, Christopher failed a urinalysis test.

¶ 3.   At a hearing on the bond forfeiture, Melone asked the court to exercise its discretion under WIS. STAT. § 969.13(2) and return the $20,000 to her. The court, after expressing that it felt badly about doing this, refused. At a motion to reconsider hearing, the trial court reached the same result for the same reason. According to the court, it *always* refuses to return bail,

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version.

no matter what the circumstances are, because giving the money back provides a disincentive to those on bail to follow their bail conditions.

¶ 4.   The bail forfeiture statute allows the court to set aside an order forfeiting bail "if it appears that justice does not require the enforcement of the forfeiture." WISCONSIN STAT. § 969.13(2). The trial court's decision under § 969.13(2) is one of discretion; we review the trial court's ruling to determine whether it properly exercised its discretion. *See State v. Achterberg*, 201 Wis. 2d 291, 300–01, 548 N.W.2d 515 (1996). As our supreme court has stated numerous times, the trial court has properly exercised its discretion if it examined relevant facts, applied proper legal standards and engaged in a rational decision-making process. *See State v. Bentley*, 201 Wis. 2d 303, 318, 548 N.W.2d 50 (1996). More specifically to this case, this court in *State v. Ascencio*, 92 Wis. 2d 822, 830, 285 N.W.2d 910 (Ct. App. 1979), indicated that exercising discretion to determine what "justice requires" pursuant to § 969.13(2) involves looking at a number of factors, some of which were enumerated in that case.

¶ 5.   Melone draws our attention to the fact that in *Ascencio*, 92 Wis. 2d at 830, this court criticized the trial court for giving *no* reasons for refusing to set aside a bail forfeiture order. Melone argues that this case mandates the same result for virtually the same reason. Melone claims that refusing to remit bail in all cases instead of weighing the relevant factors on a case-by-case basis is an erroneous exercise of discretion because it amounts to consideration of only one factor—the same factor in all cases—without any individualized assessment. We agree.

¶ 6.    The term "discretion" contemplates a *reasoning process* that depends on the *facts in the record* and yields a conclusion *based on logic* and *founded on a proper legal standard. See State ex rel. Cynthia M.S. v. Michael F.C.*, 181 Wis. 2d 618, 624, 511 N.W.2d 868 (1994). Coming to the same conclusion for the same blanket reason in every case despite the facts of each case does not satisfy this definition. Case law supports our determination. *See State v. Smith*, 203 Wis. 2d 288, 299, 553 N.W.2d 824 (Ct. App. 1996) (stating that a blanket rule to exclude prior conviction evidence "while expedient and consistent, fails to show a consideration of the proper factors"); *McCleary v. State*, 49 Wis. 2d 263, 277–78, 182 N.W.2d 512 (1971) (concluding that the failure to consider proper factors is an erroneous exercise of discretion). As stated above, *Ascencio*, 92 Wis. 2d at 830, has indicated that determining what justice requires under WIS. STAT. § 969.13(2) involves weighing a number of relevant factors. Consequently, the trial court erroneously exercised its discretion by relying on one factor rather than weighing all relevant factors.

¶ 7.    We disagree with the trial court that giving money back to the person who posted bail provides a disincentive, in every instance, to those on bail to follow their bail conditions. Sometimes a defendant's drug or alcohol addiction may be so strong that it overrides the defendant's intent not to bring financial harm to the person who posted the bond. *See, e.g., State v. Ginter*, 585 P.2d 1111, 1112–1113 (Okla. 1978). It is proper to ask: how much control over the situation does the defendant have? And how much control does the person who posted the bond have over the defendant?

¶ 8. As for guidance about what other factors may be relevant, we addressed some of these factors in *Ascencio*. There, we observed that our bail forfeiture statute is patterned after Rule 46 of the Federal Rules of Criminal Procedure. *See Ascencio*, 92 Wis. 2d at 830. We described numerous factors that the court could consider when deciding whether to remit forfeited bail. *See id.* at 831–32. We see no benefit in repeating those factors here. However, we observe that while most of the factors discussed in *Ascencio* concerned the return of bail money after the defendant failed to appear in court on a scheduled date, some of those factors can be tailored to the situation here where the son failed to abstain from consuming drugs or alcohol.

¶ 9. The factors listed in *Ascencio* should not be considered as the all-inclusive list of every factor that the trial court should take into account when deciding a case under WIS. STAT. § 969.13(2). A standard, such as "that justice . . . requires," cannot be neatly parlayed into an all-inclusive, exhaustive list. As stated by the Colorado Supreme Court:

> This standard is essentially an appeal to the conscience of the court. No clear rule can be set down which will guide the trial court in every case since the facts and circumstances of each individual case must be considered in their totality. No one factor will be determinative in all cases.

*Owens v. People*, 572 P.2d 837, 838 (Colo. 1977). Thus, while *Ascencio* does list a number of factors, other considerations might enter into the calculus, depending on the case.

¶ 10. Here, for example, Melone asked the court to weigh the fact that she tried to help Christopher

fulfill the bail condition by sending him to two treatment centers at her own expense. When he failed, she kept him in rehabilitation, presumably for his own benefit and possibly to ensure that in the future he would meet the bail condition. In *United States v. Mizani*, 605 F.2d 739, 739–40 (4th Cir. 1979), the surety tried to get the bail that he posted on his brother's behalf remitted after his brother left the country in violation of his bail condition. When denying remission, the court observed that the surety did little to supervise his brother and prevent him from leaving and did nothing to help find his brother and return him to the United States. *See id.* at 740–41. The trial court may want to consider whether Melone's attempt to help her son follow the bail condition and her attempt to fix the situation after the bail condition was violated mandates a different result than *Mizani*.

¶ 11.   At the hearing on the motion to reconsider, Melone asked the court to consider the financial hardship she would suffer by not receiving the bail money. Melone explained that she was a single parent with three children and her former husband was in arrears in making child support payments. In *Owens*, 572 P.2d at 839, the Colorado Supreme Court reversed the trial court's refusal to remit bail. In that case, the defendant's mother owed the entire amount of the bond to a bondsman as a result of the defendant's nonappearance. *See id.* at 837–38. As a result, her children had to go without food and clothing so she could repay the bondsman. *See id.* at 838. While the facts of that case are extreme, the point is well taken: financial hardship visited upon Melone and her family is a factor that the trial court may want to consider.

¶ 12.   The State argued at the motion hearing that this case is like *Achterberg*, 201 Wis. 2d at 301–02,

in which the court refused to remit bail to a defendant despite the fact that the defendant missed a court appearance because he was arrested in a different jurisdiction. The defendant had previously missed a different court date and the court considered the net effect of his missing two court dates, despite the mitigating circumstances of the second, to be indicative of his irresponsibility and refused to remit bail. *See id.* We agree with the State that the court may consider the fact that Christopher violated bail conditions twice when deciding whether to remit bail.

¶ 13.   We remand this case to the trial court with directions that it weigh all the relevant factors when deciding whether to set aside the bail forfeiture order.

*By the Court.*—Order reversed and cause remanded with directions.